OPINION
Appellant, Michelle N. Bare, is appealing from the October 2, 2000 judgment entry of the Trumbull County Court of Common Pleas granting the motion for summary judgment of appellee, Warren Consolidated Industries.
Appellant's husband, Naamon D. Bare ("Bare") was employed by appellee. On April 14, 1996, he was assigned the task of performing preventive maintenance on a galvanized line welder, a task which was part of Bare's regular duties. In order to complete the task, Bare was required to position himself in the pass line of the welder. Before beginning the maintenance work, Bare was responsible for "locking out" the hydraulic pump on the welder to ensure that it would not be inadvertently activated. Bare did not follow that procedure on this occasion.
That same morning, two electricians were instructed to change the wheels on the welder. To change the wheels, the hydraulic pump that Bare should have locked out had to be activated. While Bare was still working inside the welder, one of the electricians activated the hydraulic pump. When the pump was activated, two clamps on the welder closed and Bare was pinned between them. He died as a result of his injuries.
Appellant filed a wrongful death action on March 26, 1998. On July 24, 2000, appellee filed a motion for summary judgment. The trial court granted that motion on October 2, 2000.
Appellant has filed a timely appeal and makes the following assignment of error:
 "The trial court erred in granting summary judgment for [appellee]."
 Generally, an employee is compensated for a work-related injury through the workers' compensation system. Youngbird v. Whirlpool Corp. (1994), 99 Ohio App.3d 740, 744. However, if the employer intentionally inflicted the injury, the employee may choose to seek damages directly from the employer. Id.
An employer has committed an intentional tort against an employee if the following elements can be demonstrated: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffev. Jeno's Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. In the instant case, the trial court granted appellee's motion for summary judgment because it concluded that appellant failed to establish the second and third prongs of the Fyffe test.
In her appellate brief, appellant contends that she met the second and third prongs of the Fyffe test. With respect to the second prong, she references the affidavits of Bare's supervisor, Randy Bilkie ("Bilkie") and Douglas Dalrymple ("Dalrymple"), a safety engineer employed by appellee. Bilkie stated that appellee had a lock-out procedure, that employees were given training in that procedure and that the procedure was strictly enforced. Dalyrmple confirmed that training was given in the lock-out procedure. Appellant also relies on the affidavit of Richard Zimmerman ("Zimmerman"), a millwright employed by appellee, who stated that it was evident that the lock-out procedure was frequently violated.
Appellant suggests that this evidence is sufficient to meet the second prong of Fyffe, which requires that employer have knowledge that the employee is subjected at work to a procedure or condition so dangerous that harm to the employee will be a substantial certainty. We disagree.
Initially, we would note that the affidavits of Bilkie and Dalrymple are evidence that Bare was trained in the proper safety techniques appropriate for his job. Appellant has offered no evidence that, if Bare had followed the procedures set forth by appellee, there would have been a substantial certainty of him being injured while cleaning the welder.
While Zimmerman's affidavit suggests that safety procedures were violated by employees, there is no evidence that any other employee of appellee had been injured while cleaning the welder, or that, if Bare had locked out the welder, he would have been injured. Nor is there any evidence that appellee discouraged Bare from following the recommended safety procedures.
The general rule is that "an employer is not liable for the injuries the employee suffered on an intentional tort theory where the employee voluntarily deviates from his employer's instructions or established operating procedure." Neal v. McGill Septic Tank Co. (Dec. 4, 1998), Trumbull App. No. 98-T-0022, unreported, 1998 WL 964505, at 2. Intentional tort cases, involving workplace accidents, where courts have held that the plaintiff mustered enough evidence to avoid summary judgment are readily distinguished from the case sub judice.
In Fyffe, 59 Ohio St.3d at 120, the plaintiff was injured while cleaning a moving conveyor belt. He stated that he had been trained to clean the conveyor belt with the belt running. Id. Further, a Plexiglas safety guard had been removed to expedite the cleaning. Id. The implication of the plaintiff's statements in Fyffe was that he was engaged in a dangerous practice that involved skirting safety measures and that this practice was sanctioned by his supervisor.
Similarly, in Courtad v. Whirlpool Corp. (1989), 48 Ohio App.3d 200,203, the plaintiff's supervisor had been informed by five different people that the press which the plaintiff was operating was malfunctioning. The plaintiff further testified that, in spite of the fact that the press was malfunctioning, he was instructed to continue operating the press until he met his quota. Id.
Here, there was no evidence presented to suggest that appellee was aware of a dangerous condition, other than the danger encountered whenever an employee works with any type of heavy machinery. There is no suggestion that the welder was in any way defective. Nor is there any suggestion that appellee attempted to circumvent appropriate safety procedures or encouraged its employees to do so. While Zimmerman's affidavit suggests that appellee may have been aware of lock-out violations, appellee had trained Bare on the appropriate safety procedures and provided him with the means to execute those procedures. No evidence was presented suggesting that any representative of appellee encouraged Bare to work on the welder without first locking out the hydraulic pump. Therefore, we agree with the trial court that appellant failed to meet the second prong of the Fyffe test.
The third prong of the Fyffe test requires that the employer have knowledge of the dangerous condition, but nevertheless insist on the employee performing the task. Appellant asserts that this prong of the test was met by the simple fact that Bare was instructed to perform preventative maintenance on the welder. This assertion is utterly without merit.
There is nothing in the record to suggest that Bare, his supervisor, or any representative of appellee viewed performing preventative maintenance on the welder as an inherently dangerous task. Appellant has not identified any defects in the welder that led to Bare's injury, nor has appellant confirmed any other accidents that occurred in the course of routine maintenance being performed on the welder. Further, Bare never objected to performing the task. In light of these facts, we agree with the trial court that appellant failed to meet the third prong of theFyffe test.
For the foregoing reasons, we agree with the trial court that after construing the evidence most strongly in the favor of appellant, reasonable minds can come to but one conclusion, and that conclusion is adverse to appellant. Therefore, appellant's assignment of error is without merit because the trial court properly granted appellee's motion for summary judgment, and the judgment of the trial court is affirmed.[1]
PRESIDING JUDGE DONALD R. FORD, CHRISTLEY, J., NADER, J., concur.
[1] We would caution the trial court to refrain from using the word "find" in its judgment entry in a summary judgment exercise. Such verbiage could give the appearance that the trial court is engaging in factual findings, which is not its proper role in a summary judgment exercise. A trial court's role in ruling on a motion for summary judgment is to determine whether there are any genuine issues of material fact to be decided, not to make factual findings. Riddle v. Newton FallsExempted Village Bd. of Edn. (1988), Trumbull App. No. 4004, unreported, 1988 WL 105556, at 2, quoting Summerlin v. Edgar (C.A.4, 1987),809 F.2d 1034, 1039.